IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 22, 2025

## DOUGLAS E. ALVEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rhea County**
**No. 2016-CR-232    Justin C. Angel, Judge**

_____

**No. E2024-01305-CCA-R3-PC**

_____

The Petitioner, Douglas E. Alvey, appeals from the denial of his petition seeking post-conviction relief from his conviction of first degree murder. On appeal, he argues: (1) trial counsel were ineffective in failing to present expert testimony negating the mens rea; and (2) that he did not knowingly understand the nature of his constitutional right to testify at trial. After review, we affirm the judgment of the post-conviction court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

John Michael Deakins, Dayton, Tennessee (on appeal); Clancy Covert and Lee Ortwein, Chattanooga, Tennessee (at trial), for the appellant, Douglas E. Alvey.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Courtney Lynch, District Attorney General; and J. Michael Taylor, David Shinn, and Colin Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On September 6, 2016, the Petitioner drove his pickup truck to a thrift store in Dayton, Tennessee. State v. Alvey, No. E2020-00273-CCA-R3-CD, 2021 WL 1944393, at *1 (Tenn. Crim. App. May 14, 2021). After spending some time inside the store, the Petitioner drove his truck to the loading dock area at the back of the store, where donations could be dropped off. Id. A video of the loading dock area was admitted into evidence and shown to the jury. Id. The video showed the Petitioner getting out of his truck and unloading furniture in the parking lot several yards away from the back door, where

donations were accepted.  Id.  The Petitioner then got back in his truck and began to drive away.  Id. The victim, who was a manager and supervisor at the store, approached the Petitioner's vehicle to stop him.  Id.  As the victim walked into the path of the Petitioner's vehicle while holding up his hand, appearing to signal the Petitioner to stop, the Petitioner accelerated and struck the victim with his vehicle, causing the victim to roll onto the hood of the truck.  Id.  As the Petitioner turned onto the street, the victim was thrown from the hood of the truck into some shrubbery across the road.  Id.  The victim died a few days later from the injuries he sustained.  Id. at *2.

The Petitioner was indicted for first degree murder, vehicular homicide, and leaving the scene of an accident resulting in injury or death.  Id. at *1.  The Petitioner was represented by two trial counsel, which we will refer to as first and second counsel in this appeal.  Prior to trial, the State moved to dismiss the charge of vehicular homicide, and the trial court granted the motion.  Id.  The Petitioner was found guilty on the remaining counts, and the trial court imposed a life sentence for the first degree conviction and a sentence of two years, to be served concurrently, for the conviction for leaving the scene of an accident.  Id.  On direct appeal, this court affirmed the sufficiency of the evidence for the Petitioner's first degree murder conviction.  Id.

On April 2, 2022, the Petitioner filed a timely pro se petition for post-conviction relief.  The Petitioner alleged, as relevant to this appeal, that trial counsel provided deficient representation because they failed to inform him of his right to testify.  He also claimed that he was deprived of his right to the effective assistance of counsel because trial counsel failed to present evidence to negate the mens rea element of the first degree murder conviction.  On May 26, 2022, the Petitioner was appointed counsel, and there was no amended petition filed in this case.

The post-conviction court held an evidentiary hearing on June 24, 2024.  The Petitioner testified that first and second counsel represented him at trial.  The Petitioner initially claimed that he was informed of his right not to testify, but that no one told him he had a right to testify if he wanted.  He further stated that although he never asked counsel if he could testify at trial, he did ask them if he should testify, and they advised him against it.  The Petitioner later claimed that he told counsel that he wanted to testify.  When the Petitioner was asked whether trial counsel had advised him that he could testify if he wanted to, he responded, "Yes."  He also said that he was never told by counsel that he was not allowed to testify.  When post-conviction counsel asked, "[Y]our testimony under oath today is that you were never informed by your counsel that you had an absolute right to testify, is that what you're saying?" the Petitioner responded, "No, he told me I did have a right, but I don't remember the court telling me so."

The Petitioner did not recall the trial court informing him of his right to testify, but he did recall being advised of his right not to testify. The Petitioner introduced the transcript of from hearing pursuant to Momon v. State 18 S.W.3d 152 (Tenn. 1999), as an exhibit. During the Momon hearing, the trial court asked trial counsel if they had conversations with the Petitioner about his right to remain silent, to which second counsel responded, "[W]e have repeatedly, your Honor." The court then asked the Petitioner the same question, and he responded affirmatively. The Petitioner also agreed with the court that he had a good rapport with his attorneys, and that they requested additional time from the court to review the Petitioner's Fifth Amendment rights with him. The court asked the Petitioner, "[D]o you understand that if you chose to remain silent and not testify, that I would tell the jury they cannot hold that against you, that's your [Fifth] Amendment constitutional right to remain silent[?]" The Petitioner again responded affirmatively. The court proceeded, "[D]o you understand that I can't make you testify, your attorneys can't make you testify, the State can't make you testify. Now if you do testify it's because you want to do that of your own volition and consent, do you understand that, sir?" The Petitioner stated "[y]es" in response. When the court asked him whether he wished to remain silent or testify on his own behalf, the Petitioner stated that he wished to remain silent. Finally, the court asked the Petitioner if he had any questions about his right to remain silent, and the Petitioner responded, "No, sir."

The Petitioner claimed he was diagnosed with seizures, depression, and bipolar disorder, and that he asked trial counsel to call his doctors as witnesses to testify at trial about these diagnoses, his prescribed medications, and their effect on his mental health. The Petitioner claimed he asked trial counsel to call Dr. Stokes, the doctor who treated him for his depression, to testify at trial. Further, after his arrest, the court ordered a psychological thirty-day evaluation by Dr. Khariwal. The Petitioner was found competent to stand trial, and the Petitioner did not disagree with the results from the evaluation. He also stated that he was on medication for bipolar disorder at the time of trial and that he was medicated at the time of the incident. The Petitioner also claimed that he asked trial counsel to call Dr. Khariwal at trial. The Petitioner agreed that trial counsel did not call an expert to testify at trial and that no medical proof was presented regarding his medical conditions. He also claimed that he told trial counsel that he did not agree with their strategy of not calling any witnesses.

On cross-examination, the Petitioner agreed that Dr. Khariwal knew that he suffered from anxiety, depression, and bipolar disorder. Nevertheless, Dr. Khariwal determined that the Petitioner was competent for trial, knew right from wrong, and could appreciate the wrongfulness of his actions. On redirect, the Petitioner stated that he believed that an expert witness could have testified that his flight from the scene was a response to his pre-existing psychological disorders, and not indicative of a guilty mind.

- 3 -

First counsel testified that he was retained to represent the Petitioner at trial. He met with the Petitioner several times leading up to the trial to discuss trial strategy, but a determination of whether the Petitioner would testify was not made. After the State rested its case, first and second counsel met with the Petitioner privately for about forty-five minutes to discuss the case and talk with the Petitioner about his right to testify and his right not to testify. First counsel stated that their entire defense strategy was to negate the mens rea element of premeditation for first degree murder. First counsel said they advised the Petitioner not to testify because they "didn't think he would be a very effective witness," and there was "nothing he could shed on the circumstances surrounding [the victim's] death." He further testified that the Petitioner "clearly indicated that he did not feel that it would be good for him to testify." First counsel agreed that the case turned on the State proving the Petitioner's mens rea, stating that "it was all or nothing. . . . [I]t was either first degree murder or we were trying to get it knocked down to something lower than that." When asked if he ever advised the Petitioner that he should not testify, first counsel stated:

> I suggested to [the Petitioner] that I did not think it would be in his best interest to do so, but I did not tell him, you know, you're not testifying or I'm not going to allow you to testify or anything like that. I just made the suggestion that I made and he agreed with us.

First counsel believed that the issues the Petitioner would have been asked about had he testified would have only solidified the mens rea and the State's argument.

First counsel was aware of the Petitioner's mental disorders at the time of trial and had spoken at length with the Petitioner about his prior medical issues. Although Dr. Khariwal was available to testify, her testimony would not negate the Petitioner's mens rea to premeditate the offense. When trial counsel asked Dr. Khariwal to provide testimony concerning how the Petitioner's mental condition impacted his mens rea, she said they were not mutually exclusive and that "[t]here's a lot of people that are depressed and have anxiety that can form premeditation." First counsel was concerned that calling Dr. Khariwal or Dr. Stokes to testify at trial would benefit the State's case. He believed the downside of having an expert witness testify about the Petitioner's medical conditions was that Dr. Khariwal's report would be admitted at trial. First counsel said, "[The Petitioner] scored twenty-nine out of thirty on cognitive abilities. Yes, it does talk about his mental conditions of anxiety, depression, severe depression, epilepsy, things of that nature, but none of those, according to our conversations with Dr. Khariwal and other people," negated the mens rea. First counsel said that he could not find a medical or a mental health professional to testify that the Petitioner's medical and mental health conditions had any impact on his mental status at the time of the offense. Ultimately, first counsel stated that he was "[o]ne hundred percent" certain that there was no viable medical defense to pursue

- 4 -

in the case. He did not call Dr. Khariwal to testify because she would not testify that the Petitioner's medical conditions "caused him to react differently than anyone else or caused him to not appreciate the wrongfulness of his acts." First counsel believed that calling any expert on the Petitioner's behalf without having the testimony to negate the mens rea would "put nails in [the Petitioner's] coffin." He reasoned that Dr. Khariwal's report "says [the Petitioner is] lucid, he's competent, he's cognitive, . . . [and] there were no issues mentioned at the time of the incident about him having some epileptic seizure or depression or in a severe depressive bout . . . ."

On cross-examination, first counsel agreed "one hundred percent without a doubt" that he informed the Petitioner of his right to testify. He advised the Petitioner multiple times of the pros and cons of testifying, he answered all the Petitioner's questions regarding his right to testify, and the Petitioner seemed to understand first counsel's advice. When asked if the Petitioner ever told him explicitly to call Dr. Stokes as a witness, first counsel responded, "No."

Second counsel testified that he also represented the Petitioner in the trial and stated that they decided not to call an expert concerning mental health issues. Second counsel explained that Dr. Khariwal's report said that any mental health condition the Petitioner had at the time of the offense would have had no impact on his conduct. Second counsel said that both he and first counsel informed the Petitioner of his right to testify at trial. He elaborated further, stating that "with respect to cases where the individuals are charged with crimes that carry the [most severe] penalty like this one, [his] practice has always been to . . . let the defendant make that decision instead of [himself]."

After hearing the above testimony, the post-conviction court filed a written order denying the petition. In the order, the court found that the Petitioner was informed of his right to testify at trial and that he failed to establish that trial counsel were deficient or that their deficient performance prejudiced the defense. The court relied on first counsel's testimony about his strategy to negate premeditation, his communications with the Petitioner, and the "extensive Momon hearing" The court also found that the Petitioner failed to prove by clear and convincing evidence that he received ineffective assistance of counsel. The court emphasized that none of the doctors contacted by first counsel told him that the Petitioner's diagnoses or medications would have caused an involuntary action that would negate the mens rea. The Petitioner then filed an untimely appeal to this court.

## ANALYSIS

As an initial matter, we must briefly address the timeliness of the Petitioner's notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states, "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after

the date of entry of the judgment appealed from; however, in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Hill v. State, No. 01C01-9506-CC00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996)). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" Id. (quoting State v. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)); see also, State v. James, No. E2021-00559-CCA-R3-CD, 2022 WL 633540, at *1 (Tenn. Crim. App. Mar. 4, 2022) (declining to find the interest of justice mandated waiver where pro se defendant's notice of appeal was seventeen days late without requesting a waiver or providing an explanation for the untimely filing).

The order denying the petition for post-conviction relief was filed on July 24, 2024. As such, the notice of appeal should have been filed within thirty days or no later than August 23, 2024. The Petitioner filed his notice of appeal on August 27, 2024, four days after the deadline. Although the Petitioner did not address the timeliness issue on the merits in his opening brief, given the seriousness of the conviction offenses in this case, the shortness in the delay in filing the notice, and the nature of the issues presented, we waive the timely filing requirement in the interest of justice. Accordingly, we will review the issues presented in this appeal.

The Petitioner argues on appeal that first and second counsel were ineffective in failing to present expert proof about the Petitioner's mental health issues and that he did not knowingly understand the full nature of his constitutional right to testify. The State first responds that the Petitioner is not entitled to relief because he failed to establish that first and second counsel were ineffective in not calling an expert to testify regarding his mental health. The State also avers that the Petitioner was informed of his right to testify by both counsel and the court during the Momon hearing.

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). A petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State,

983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley, 397 S.W.3d at 80 (citing Momon, 18 S.W.3d at 156). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id. (citing Grindstaff, 297 S.W.3d at 216; Finch v. State, 226 S.W.3d 307, 315 (Tenn. 2007); Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; see also Tenn. Code Ann. § 40-30-103 (granting relief when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States). To prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

The prejudice showing is, in most cases, a necessary part of a Strickland claim. Weaver v. Massachusetts, 582 U.S. 286, 300 (2017). The reason is that a defendant has a right to effective representation, not a right to an attorney who performs his duties mistake-free. Id. (citations and internal quotation marks omitted). As a rule, therefore, a violation of the Sixth Amendment right to effective representation is not "complete" until the defendant is prejudiced. Id. Under Strickland, "[b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

**I. Expert Testimony**. The Petitioner's first issue raised is whether first and second counsel were ineffective in failing to call an expert witness to testify regarding his mental health and its impact on his mens rea. He asserts that trial counsel knew that the Petitioner

had mental health issues that could affect his mental state but did not introduce any proof of the Petitioner's mental state at trial, which was "an abdication of lawyer duty that amounts to deficient performance that prejudiced the [Petitioner]." The State responds that the Petitioner failed to establish any deficiency because "his trial attorneys testified that they could not find a helpful expert witness, and they were concerned that the State would highlight Petitioner's strong cognitive abilities on cross-examination." Additionally, the State asserts that the Petitioner failed to present these witnesses at the post-conviction hearing, and as such, cannot establish prejudice. We agree with the State.

The record does not preponderate against the determination of the post-conviction court. First counsel testified that his strategy was to attack the element of premeditation. First counsel attempted to locate a doctor who would testify to support their defense, but they were unable to find any doctor who would testify that the Petitioner's medical condition or diagnosis negated the element of premeditation. Although Dr. Khariwal was available to testify during trial, she would not have testified favorably in support of the Petitioner's defense. Dr. Khariwal told trial counsel that none of the Petitioner's mental conditions negated the mens rea or had any impact on his mental status at the time of the offense. First and second counsel were also concerned that having Dr. Khariwal testify could have benefited the State's case because she would be subject to cross-examination about her report on the Petitioner's psychological thirty-day evaluation and how the Petitioner scored twenty-nine out of thirty on cognitive abilities. Finally, despite his contentions to the contrary, the Petitioner failed to present an expert witness at the post-conviction hearing to establish this claim and, as such, has not shown what testimony these witnesses would have been able to provide regarding the Petitioner's mental state. Black v. State, 764 S.W.2d 752, 757-58 (Tenn. Crim. 1990). Accordingly, the Petitioner has failed to establish deficient performance of first and second counsel or prejudice to his defense by their actions. He is not entitled to relief.

**II. Denial of Right to Testify.** The Petitioner alleges that the post-conviction court erred by finding that he "knowingly understood the full nature of his constitutional right to testify at trial." The State responds that the Petitioner waived this issue because "the concern regarding his right to testify was raised as an ineffective assistance claim in the post-conviction court." Alternatively, the State argues there was no deficiency in trial counsels' performance in informing him of his right to testify and that the Petitioner failed to establish any prejudice. In so much as the Petitioner is attempting to recast his original claim that first and second trial counsel were ineffective in failing to advise him of his right to testify into an independent constitutional claim, we agree with the State and conclude that the Petitioner has waived this issue for failure to raise it before the trial court. See e.g. Mobley, 397 S.W.3d at 104 (citing Tenn. Code Ann. § 40-30-106(g)) (holding that the petitioner waived his Momon claim by not presenting it to the trial court or on direct appeal); Edwards v. State, No. E2023-00410-CCA-R3-PC, 2024 WL 3311438, at *11

- 8 -

(Tenn. Crim. App. July 5, 2024) (stating that the Petitioner's stand-alone <u>Momon</u> claim was waived because the claim regarding his decision not to testify was raised as an ineffective assistance claim in the post-conviction court), <u>perm. app. denied</u> (Tenn. Dec. 10, 2024); <u>Thomas v. State</u>, No. 2004-01704-CCA-R3-PC, 2005 WL 1669898, at *2-3 (Tenn. Crim. App. July 18, 2005) (addressing the petitioner's <u>Momon</u> claim only as it related to ineffective assistance of counsel because the stand-alone claim was waived).

We further conclude that the record does not preponderate against the determination of the post-conviction court regarding whether first and second counsel properly advised the Petitioner of his right to testify. The extent of the Petitioner's argument in his brief on this issue is as follows:

> In the instant case, defense counsel — nor the trial court for that matter — really made sure that Appellant understood (2) above — that he had the right to testify. Appellant confirmed this in his own testimony at the Post-Conviction hearing when he testified that "no one told me I had a right not to testify.

The record shows that at trial a <u>Momon</u> hearing was conducted to review the Petitioner's rights with him and to determine whether he intended to testify. During the extensive <u>Momon</u> hearing, first counsel, second counsel, and the Petitioner agreed that they had conversations about the Petitioner's right to remain silent. The trial court asked the Petitioner, "[D]o you understand that I can't make you testify, your attorneys can't make you testify, the State can't make you testify. Now if you do testify it's because you want to do that of your own volition and consent, do you understand that, sir?" and the Petitioner responded affirmatively. When the court asked the Petitioner whether he wished to remain silent or testify on his own behalf, the Petitioner stated that he wished to remain silent. Finally, the trial court asked the Petitioner whether he had any questions about his right to remain silent, and he responded that he did not.

At the post-conviction hearing, first and second counsel confirmed that they had informed the Petitioner of his right to testify at trial. First counsel testified that he advised the Petitioner multiple times of the pros and cons of testifying, that he answered all the Petitioner's questions regarding his right to testify, and that the Petitioner seemed to understand his advice. First counsel further testified that the Petitioner agreed with his advice not to testify, saying that the Petitioner "clearly indicated that he did not feel that it would be good for him to testify." Second counsel confirmed that he and first counsel discussed the right to testify with the Petitioner many times and that second counsel's practice was to always let the defendant decide whether to testify when the defendant is charged with a crime that carries the most severe sentence. The Petitioner also acknowledged that at least one of his attorneys informed him of his right to testify. Based

on this proof, the Petitioner has failed to establish deficient performance or prejudice arising therefrom.  Accordingly, the Petitioner is not entitled to relief.

## **CONCLUSION**

Based on the above reasoning and authority, we affirm the judgment of the post-conviction court.


s/                    Camille                    R. McMullen
CAMILLE R. MCMULLEN, PRESIDING JUDGE